JACOB VOGLE

v.

ALBIGENCE H. BROWN et al.

*Filed at Springfield March 23, 1887—Rehearing denied June Term, 1887.*

1. DECREE—*as to one not a party.* A decree of partition of land will not be binding on the holder of a debt secured by a deed of trust on a portion of the premises, when he is not made a party to the suit, even if the trustee in the deed is made a party.

2. SAME—*ratification of decree by one not a party—effect of acceptance of proceeds of sale made under decree.* A decree in partition of lands upon a part of which there was a deed of trust securing a note of $2000, set off ten acres of the mortgaged premises to be divided into lots, and sold by the master to pay off the incumbrance. The trustee was made a party, but not the holder of the note secured by the trust deed. The lots on sale realized about half the amount due on the note, which was paid to the holder of the note: *Held*, that the acceptance of the proceeds of the sale of the lots by the holder of the note, was not a ratification of the decree, so as to bind him thereby, as his right to the proceeds was not derived from the decree, but from the trust deed, and did not, therefore preclude him from a foreclosure.

3. SAME—*a decree construed—whether limiting rights of mortgagee.* After the giving of a deed of trust by a part of the tenants in common on a tract of one hundred and thirty-four acres of land, a bill was filed for partition, and the decree therein entered, recited that it was made to appear that ten acres of the mortgaged premises would sell for enough to pay off the incumbrance, and ordered ten acres thereof to be sold by the master for the payment of the same, and ordered partition of the residue of the land, without any expression that the proceeds of the sale of the ten acres should be taken in full satisfaction of the incumbrance. The proceeds paid only about half of the mortgage debt: *Held*, that the decree did not affect the lien of the trust deed on the remainder of the tract for the balance due on the debt thereby secured.

4. TENANTS IN COMMON—*contribution to remove incumbrance, or to reimburse one who has paid off the same.* Where money has been borrowed by a widow and the adult heirs of a deceased person, and used to pay the debts of the estate, and the interests of the adult heirs were mortgaged to secure the loan so made, on bill for partition it will be proper, in apportioning the incumbrance, to require the share of a minor heir in the land to bear its proper part of the same.

5. SAME—*in case of successive sales—marshaling the burden.* And in case a grantee of one of the tenants in common is compelled to pay off the

incumbrance, he may, on bill filed, have contribution from the several other tenants in common, and when one of the tenants in common has made several conveyances of distinct parcels, they will be held liable for contribution in the inverse order of alienation. And as between such tenant in common and his grantee, the part remaining unsold will be held first liable to contribute.

6. MARSHALING ASSETS—*in the case of successive conveyances—of the order of contribution.* Where a mortgagor has conveyed the mortgaged premises in different parcels, and the grantees of these parcels again convey them in parcels, the grantees of the latter parcels will be liable to contribute toward the discharge of the incumbrance, for the share of the mortgage chargeable upon their grantors' share of the premises, in the inverse order of conveyance to them. But this rule will not be applied when it works injustice.

7. AFFIRMANCE AND REMANDMENT—*of their proper scope and effect.* On bill for contribution, the trial court denied the right to contribution. On appeal to the Appellate Court, the judgment of that court, as shown by the record, was, that the decree of the circuit court be reversed, "and that this cause be remanded to the circuit court, with directions to ascertain the amounts due, by way of contribution, from the other parties liable, and decree that they pay the same to the complainant." On a further appeal to this court, the final order was, that the judgment of the Appellate Court be affirmed, "and the cause remanded to the circuit court for further proceedings in conformity with the judgment of the Appellate Court." It was objected to this final order, that in affirming the judgment of the Appellate Court, it was inconsistent with the opinion herein, because there were elements in the decision of the Appellate Court, as shown by its *opinion,* which are not in harmony with the ruling of this court,—that is, as to *how* the contribution should be made. But the opinion of the Appellate Court was not before this court in any way, and the judgment of affirmance in this court, and the order of remandment, are to be understood as having reference to the *judgment* of the Appellate Court as found in the record,—nothing more; that is, as determining the *right* to contribution, simply.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

This was a proceeding commenced by Sylvanus Shurtleff, in the circuit court of DeWitt county, by bill in chancery, as purchaser of a portion of a tract of land on which there was an incumbrance, which he paid, against the owners of the other portions of said incumbered tract, for contribution.

In March, 1871, John Adkisson died intestate, leaving surviving him, a widow, Corrilla Adkisson, and three sons, Thomas B., Horace and Frank Adkisson, his only heirs-at-law. The widow was appointed administratrix of the estate. The personal property being insufficient to pay the debts of the estate, on June 1, 1874, the widow and children (except Frank, who was a minor,) borrowed $2000 from Albigence H. Brown, giving their note for that sum, payable in five years, with interest at the rate of ten per cent, to secure the payment whereof, they executed a trust deed to Charles F. Emery, trustee, upon a tract of land of one hundred and thirty-four acres, of which the said John Adkisson died seized. On July 22, 1875, the said Corrilla, Thomas B. and Horace Adkisson filed, in the circuit court of De Witt county, their bill for dower and partition of the real estate left by John Adkisson, making Frank Adkisson, the minor, and Charles F. Emery, the trustee, but not Albigence H. Brown, defendants. In their bill they state the facts as to borrowing the said $2000, and that it was used in payment of the debts of the estate. The bill further stated their opinion, that ten acres (describing it,) of the land covered by the trust deed would sell for enough to pay off said incumbrance, and asked that the ten acres be sold in lots to suit purchasers, and the proceeds of the sale be applied to the payment of such incumbrance, or that the lien be apportioned among all the heirs of said John Adkisson, equally, and after that was done, that the land remaining might be divided according to the rights of the parties. The court decreed therein, that the master in chancery sell the said ten acres, (which was set off as lot No. 1,) in lots to suit purchasers, and apply the proceeds, after payment of costs, to the payment of the said incumbrance. In the same case, the court divided the lands covered by the trust deed, into five lots, numbered from 1 to 5, inclusive, and after directing sale of lot 1, as above, set off lot 2 to Horace

Adkisson, lot 3 to Frank Adkisson, lot 4 to Corrilla Adkisson, and lot 5 to Thomas B. Adkisson.

On January 6, 1876, Thomas B. Adkisson conveyed his lot 5 to Andrew Hutchin, by deed. This lot is a long strip, running north and south, with two railroads running across it east and west, cutting it into three parcels. On February 26, 1876, Hutchin conveyed the northern parcel to Sylvanus Shurtleff, and the southern parcel to P. H. Mills, and on March 6, 1876, he conveyed the middle parcel to Jacob Vogle. On January 1, 1876, Horace Adkisson paid to Emery, trustee, one-third of the amount due on the incumbrance, and the latter released the lot 2 included in the trust deed, which had been set off to him, Horace Adkisson. The master in chancery afterwards sold lot 1, under said decree, and realized from the sale $1292, and paid to Emery, trustee, from the proceeds, $1076.40. The last payment made by the master to Emery was on November 1, 1880, and left, at that date, a balance due on the incumbrance, of $930. There being no further payments made, Emery, as trustee, at the instance of Brown, the holder of the $2000 note, advertised for sale all of the premises included in the trust deed, except said lots 1 and 2. The sale was advertised for January 20, 1882, and on that day Emery received for Brown, from Corrilla Adkisson, $450, which was supposed to be her full share of the incumbrance which her dower interest should pay, and to make the balance still remaining unpaid, Emery, trustee, offered for sale the part of said lot 5 set off to Thomas B. Adkisson, which Hutchin had sold to Sylvanus Shurtleff, as above stated. The tract so offered was bid in by John Warner, for Shurtleff, for the balance due on the trust deed,— $685.66,—which was received by Emery. A trustee's deed was made by him to the purchaser, and on the same day he executed a release of the trust deed.

On July 15, 1882, Shurtleff filed his bill in this cause, asking contribution from the other parties interested, in respect

of the amount paid by or for him at the sale made by Emery, trustee. Emery and Brown, among others, were made parties, the bill asking that if they, or either of them, had received money on the note mentioned in the trust deed, to which they were not entitled, they might be decreed to pay the same to the party entitled thereto. The circuit court refused to grant the prayer for contribution, but decreed that Emery should pay back to Shurtleff the amount received by Emery at the trustee's sale,—$685.66,—with interest thereon. On appeal to the Appellate Court for the Third District, that court reversed the decree, and remanded the cause, with directions to the circuit court to ascertain the amounts due, by way of contribution, from the parties liable, and decree payment of the same to the complainant,—from which judgment of the Appellate Court, Jacob Vogle, one of the defendants, prosecutes this appeal, the requisite certificate having been made.

Mr. WILLIAM MONSON, for the appellant:

Emery's rights and powers under the trust deed were fully settled in the partition suit, and no power remained in him to sell any of said lands. *Carter* v. *Penn,* 99 Ill. 390; *Peterson* v. *Neff,* 80 id. 25; *Horton* v. *Critchfield,* 18 id. 133; *Fryrear* v. *Lawrence,* 5 Gilm. 325; *Loomis* v. *Riley,* 24 Ill. 307; *Kelly* v. *Donlin,* 70 id. 378; *McGee* v. *Wright,* 16 id. 555; *Ogden* v. *Chicago,* 22 id. 592; *Goudy* v. *Hall,* 36 id. 313; *Fitzhorn* v. *Lake,* 29 id. 165.

In a partition proceeding, the statute has fixed the power of the court by giving effect to the decree over incumbrances.

A person having a mortgage, attachment, or other lien on the share of a part owner, shall be concluded by the judgment in partition, so far as it respects the partition and the assignment of the shares, but the lien shall remain in full force upon the part assigned to or left for such part owner. Hurd's Stat. 1885, chap. 106, sec. 24.

Messrs. Moore & Warner, for Shurtleff:

The court below having power to apportion the incum-brances, there is no inquiry whether it was rightfully done or not.    Partition act of 1861, sec. 39.

As to the power of the court, under this statute, we think the following cases conclusive: *Breit* v. *Yeaton,* 101 Ill. 242; *Gage* v. *Lightburn,* 93 id. 248; *Henrichsen* v. *Hodgen,* 67 id. 179; *Harrer* v. *Wallner,* 80 id. 197; *Merritt* v. *Merritt,* 97 id. 243; *Hopkins* v. *Medley,* 99 id. 509.

Emery was bound by the decree in the partition case, and he can not legally claim that his act in selling Shurtleff's land was legal, because Brown was not made a party to that suit.    As to Emery, we insist the case is *res judicata.    Carter* v. *Penn,* 99 Ill. 390; *Peterson* v. *Neff,* 80 id. 25; *Horton* v. *Critchfield,* 18 id. 133; *Fryrear* v. *Lawrence,* 5 Gilm. 325; *Loomis* v. *Riley,* 24 Ill. 307; *Kelly* v. *Donlin,* 70 id. 378; *McGee* v. *Wright,* 16 id. 555; *Weiner* v. *Hentz,* 17 id. 259; *Ogden* v. *Chicago,* 22 id. 592; *Goudy* v. *Hall,* 36 id. 313; 30 id. 109; *Fitzgibbon* v. *Lake,* 29 id. 165.

Emery being an agent to collect, notice to him was notice to Brown, and if he accepted the proceeds of the sale under the decree, it was a ratification of it, and he is estopped. *Noble* v. *Nugent,* 89 Ill. 522; *Thayer* v. *Meeker,* 86 id. 470; *Manufacturing Co.* v. *Holdfoldt,* id. 455; *Booth* v. *Wiley,* 102 id. 84; *Noble* v. *Chrisman,* 88 id. 186; *Ely* v. *Hanford,* 66 id. 267; *Walker* v. *Mulvean,* 76 id. 18.

As to the rule of contribution, if there is any to be had, see 2 Jones on Mortgages, sec. 1621; *Iglehart* v. *Crane,* 42 Ill. 261; Adams' Eq. sec. 268.

Messrs. Outten & Vail, for the appellees Emery and Brown:

Brown being no party to the partition suit, was not affected by any decree therein.    Perry on Trusts, sec. 602; Jones on Mortgages, sec. 1769.

The plaintiff, however, should state distinctly and particularly the grounds on which he omits to make the creditors, or other person interested in the matter in controversy, parties to the suit. Jones on Mortgages, (2d ed.) sec. 1397; *Land Co.* v. *Peck,* 112 Ill. 435.

Trustees and *cestuis que trust* are the owners of the whole interest in the trust estate, and, therefore, in suits, in equity, in relation to the estate, by or against strangers, both the trustees and *cestuis que trust* must be parties representing that interest. Perry on Trusts, sec. 873.

By receiving the money of Emery, obtained under the decree, Brown ratified the partition decree, and is estopped from complaining of the decree. *Noble* v. *Nugent,* 89 Ill. 522; *Thayer* v. *Meeker,* 86 id. 470; *Manufacturing Co.* v. *Holdfoldt,* id. 455; *Booth* v. *Wiley,* 102 id. 84; *McDermed* v. *Cotton,* 2 Bradw. 297; *Hurd* v. *Marple,* id. 402; *Morrill* v. *Sloan,* 1 Minn. 471.

The borrowing of the money, mortgaging part of the land, released all other parts of the land except the minor's tract. *Stevens* v. *Cooper,* 1 Johns. Ch. 425; *Chisbrough* v. *Millard,* id. 409; *Campbell* v. *Misier,* 4 id. 334; Story's Eq. Jur. secs. 477, 478, 483, 484.

Moore and Phares ought not to contribute, for when they bought, the land was clear of incumbrance.

Mr. Justice Sheldon delivered the opinion of the Court:

The decree of the circuit court was manifestly erroneous. Whatever the partition decree might have been, Brown, the real party in interest, would not have been bound thereby, he not having been made a party to the suit. (*Scanlan* v. *Cobb,* 85 Ill. 296.) And it was his right, notwithstanding that decree, to have Emery, the trustee, proceed, and make sale of the whole or any part of the land covered by the trust deed, for its satisfaction. In thus performing his duty, under the

trust deed, to Brown, in making such sale, Emery, although he was a party to the partition suit, would not have been liable to refund to the owner of the land any money which he might have received on the sale. Nor, as is claimed, would there have been any ratification of the partition decree by Brown, so as to make it binding on him, by his reception of the proceeds of the sale of the ten acres. His right to such proceeds would not come from the decree, but from his trust deed, under which he was entitled to have the proceeds of the sale of all or any part of the land embraced in the trust deed, applied to its satisfaction, so far as necessary for that purpose; and receiving the amount for which a part of the land was sold, it being less than the debt secured, would not affect the lien of the trust deed on the residue of the land.

But the circuit court was evidently under a misconception of what the partition decree was. It took that decree as confining the lien of the trust deed to the ten acres, and exempting from such lien the residue of the one hundred and thirty-four acres covered by the trust deed. That, the decree did not do. The decree recited, that it had been made to appear to the court that the ten acres would sell for a sufficient amount to satisfy the trust deed, and ordered the ten acres to be sold by the master in chancery, and that he apply the proceeds of the sale to the payment of the trust deed, bringing the overplus, if any, into court; that the costs be paid out of the proceeds, and partition was made of the rest of the land. This was all. There was no expression that the lien of the trust deed should be restricted to the ten acres, or that the proceeds of the sale of the ten acres should be taken in full satisfaction of the trust deed, or that the residue of the land should be exempted from the lien of the trust deed. The decree, as appears, proceeded upon the assumption that the ten acres would sell for sufficient to satisfy the deed of trust, but it did not declare that the ten acres, or the proceeds of its sale, should satisfy the trust deed. There was, in fact,

realized from the sale of the ten acres, only about half the amount of the debt secured by the trust deed. It would be so erroneous that a mortgage on one hundred and thirty-four acres of land should be made one on only ten acres of it, or that a sum which proved to amount to only about one-half of a mortgage debt admittedly due, should be ordered to be taken in full satisfaction of the whole debt, that a decree should not be held as so ordering, without express language to that effect. The Appellate Court, then, rightly reversed the decree of the circuit court.

The main question in the case was, as to the effect of the partition decree upon the mortgage, and whether Shurtleff is entitled to contribution, and his right to contribution being determined, the case, under the direction of the Appellate Court, will go back to the circuit court, to decide how contribution shall be made, and neither of the courts below having acted upon that subject, this court, perhaps strictly, should not speak thereon, its proper province being but to review the action of the lower courts upon the subject. The question, however, of how contribution should be made, has been discussed by counsel, and we are requested to pass upon it. In view of this, it may not be improper to give an intimation of our opinion as to the general rule applying, so far as it appears to be in dispute between the parties.

In the partition, there was set off to the widow, as her dower, lot 4, and eighty acres and forty acres of land besides. On February 10, 1876, Clifton H. Moore purchased Thomas B. and Horace Adkisson's two-thirds interest in the eighty acres, and Horace Adkisson's one-third interest in the forty acres, and Thomas B. Adkisson's one-third interest in lot 4; and on January 9, 1880, Horace Adkisson conveyed his one undivided third interest in the forty acres to Abner R. Phares. The parties, here, appear to be agreed that the incumbrance should be apportioned upon the several interests as partitioned, so that each several interest shall pay its ratable share, and

the only real matter in difference, as here discussed, seems to be in respect to the lands purchased by Moore and Phares, —whether they should contribute at all, and if so, in what manner. The eighty and forty-acre tracts were not included in the deed of trust, but as the money borrowed was applied in payment of the debts of the estate, and thus relieved the lands from the lien of the debts, it is insisted they should be charged with the payment of the money borrowed. This we think to be reason sufficient for charging the interest of the minor heir, Frank Adkisson, who did not join in the mortgage, but not for charging the lands,—the eighty acres and forty acres in the hands of Moore and Phares. The money borrowed had paid off all the debts of the estate before Moore and Phares purchased, so that when they came to purchase, there were no debts whatever of the estate, and they took their lands entirely free and unincumbered with any lien for debts. But lot 4 was in the mortgage, and we think the interest in that lot which Moore purchased should stand chargeable. The matter then stood thus : The widow having paid what was considered as the proper proportion her dower estate should contribute, the one-third interest of Thomas B. Adkisson, consisting of his lot 5 and his reversionary estate in lot 4 after the termination of the dower estate therein, was chargeable with his proper proportion of the incumbrance,— say one-third thereof. He then, on January 6, 1876, conveyed a part of his interest, to-wit, lot 5, to Andrew Hutchin. This left the remaining part of Thomas B. Adkisson's interest, to-wit, his reversionary estate in the dower lot 4, in his hands, and as between these two parts, to satisfy the incumbrance which rested upon the whole of the two parts, the part remaining in Adkisson's hands, his said reversionary estate, should first be exhausted before recourse to the part which he had sold to Hutchin. Afterwards, on February 10, 1876, Thomas B. Adkisson conveyed his reversionary estate in lot 4 to C. H. Moore, and it stood chargeable in Moore's hands in

the same manner that it was in the hands of his grantor,—that is, liable to be first applied,—and leaving lot 5 only liable for any deficiency there might be after such application. Subsequently, Hutchin conveyed lot 5 in different parcels to Shurtleff, Mills and Vogle, and Vogle conveyed his parcel to Ely, and Ely conveyed the same to Dunmire.

The rule mentioned applies where the mortgagor has conveyed the mortgaged premises in different parcels, and the grantees of these parcels again convey them in parcels, the grantees of the latter parcels being liable, under this rule, for the share of the mortgage chargeable upon their grantor's share of the premises, in the inverse order of conveyance to them. (2 Jones on Mortgages, sec. 1621.) The rule will not, however, be applied in any case where its application would work injustice. Ibid.

The judgment of the Appellate Court will be affirmed, and the cause remanded to the circuit court for further proceedings in conformity with the judgment of the Appellate Court.

*Judgment affirmed.*

Subsequently, on June 14, 1887, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: We are asked to grant a rehearing in this case, or to modify the final order therein so as to conform to the opinion of the court,—

"Because the final order of this court in affirming the judgment of the Appellate Court is inconsistent with the opinion rendered herein, in this, the Appellate Court holds that Frank Adkisson's (the minor's) interest is liable for one-third of the original incumbrance, and that Thomas B. Adkisson's interest was chargeable for the same proportion, but that he had discharged it, except as to $200 on Hutchin's; that Thomas B. Adkisson should pay $200, and Hutchin, if solvent, should pay the residue of Thomas B.'s third, and if not solvent, then the residue to be charged to his (Hutchin's) grantees, in the

inverse order of alienation from him. (See opinion of Appellate Court in this cause, filed November 20, 1886.)"

The record does not show any such holding of the Appellate Court. We have no knowledge of any such holding, and our opinion in this case does not affirm any such holding, if there be such, of the Appellate Court. The circuit court had decided, merely, that the complainant was not entitled to contribution, because the alleged incumbrance upon the lands which he paid off was not an existing incumbrance upon the lands, it having been before that time extinguished. The Appellate Court reversed that judgment, and we affirm merely that judgment of reversal, and not any other judgment or holding of the Appellate Court. That is all the judgment or holding of the Appellate Court which the record shows.

The judgment of the Appellate Court, as shown by the record, is, that the decree of the circuit court be reversed, "and that this cause be remanded to the circuit court, with directions to ascertain the amounts due, by way of contribution, from the other parties liable, and decree that they pay the same to complainant." We are asked to see opinion of Appellate Court filed November 20, 1886. The record does not contain the opinion of the Appellate Court. The opinion has not, in any way, been brought to our notice, and we can not travel out of the record to the clerk's office of the Appellate Court to search the files there for matter upon which to base any decision. The remanding order of the Appellate Court makes no reference whatever to the opinion as to any proceeding in conformity thereto, but the direction is general, to ascertain the amounts due, by way of contribution, from the parties liable. If the opinion of the Appellate Court assumes, in any way, to find how contribution should be made, we know nothing of it, and affirm no holding in that regard of the court, but merely affirm the judgment that the complainant is entitled to contribution, and any future action of the courts below should proceed upon that understanding. The remand-

ing order made by this court, for further proceedings in conformity with the judgment of the Appellate ·Court, means what it says,—that the further proceedings be in conformity with the *judgment* of that court, as shown by the record, and that merely, and not in conformity with its *opinion.*

We see no cause to grant a rehearing, or to modify our final order in the case.

*Rehearing denied.*