### CLIFTON H. MOORE

*v.*

### SYLVANUS SHURTLEFF *et al.*

*Filed at Springfield May 14, 1889.*

1. INVERSE ORDER OF ALIENATION—*application of the rule in the case of a prior mortgage.* The owner of certain lots of land, numbered 4 and 5, subject to a trust deed on them and other property, sold lot 5 to A, and afterward sold lot 4 to B. A afterwards sold and conveyed lot 5, as follows, and in the order indicated: to C the north part thereof, to D the south part, and, lastly, to E the middle part: *Held,* that if lot 5 were sold without conditions, lot 4, subsequently conveyed, would be first charged with the whole sum due on the trust deed, and after it should be exhausted, the subdivisions of lot 5 would be liable in the inverse order in which they were conveyed by A.

2. The general rule of inverse order, above stated, is never applied when the parties, by an agreement in their deed, have charged a mortgage upon land in a different manner,—as when, by the terms of the sale of a part of the premises, the mortgage is made a common charge, or the part conveyed is subjected to a proportionate part of the incumbrance. In such case, if there be no specific agreement as to the proportion which each part is to bear, contribution must be made according to the relative value of each part.

3. SAME—*of an agreement as to liability of separate parcels sold.* A sold to B his interest in lot 5, which, with lot 4, was subject to a deed of trust, together with other land. A's deed provided that the sale was subject to the deed of trust of $2000, to secure the payment of which, ten acres of other land had been set aside, by decree of court, to be sold, and the proceeds applied on the debt; that after the sale of said ten acres, and application of the proceeds, A was to further protect B to the amount of $200 against the trust deed, and no more, B to pay any excess due thereon over the proceeds of the ten-acre tract, and said $200; that if the proceeds of the ten acres should be more than was required to satisfy the deed of trust, the excess should be paid to A, and that said B "hereby agrees to save and forever keep the said grantor harmless from the payment of any sum by reason of said trust deed, other than herein provided." After this sale, A sold lot 4 to C, and B subdivided and sold and conveyed lot 5 in three parcels: *Held,* that by the stipulation or agreement in A's deed to B, it was the intention of the parties, that instead of lot 5 being held *pro rata,* as it would have been under the first clause, it should be held only liable to the extent, but no further, than the mortgage debt should exceed the proceeds of the ten acres, and $200.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of DeWitt county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MOORE & WARNER, for the appellant and Shurtleff:

The rule that mortgaged lands are liable to the debt in the inverse order of their alienation, is subject to two exceptions: First, when, upon examination of the various deeds, the court can see that it was the intent of the parties to change the rule; second, when the carrying out of the rule would work great injustice. 2 Jones on Mortgages, secs. 1092, 1620-1625, and cases cited in note 4; *Hoy* v. *Bramhall,* 19 N. J. 593; *Briscoe* v. *Power,* 47 Ill. 447; *Vogel* v. *Brown,* 120 id. 338.

On the point that the parties can change the rule by contract, we refer the court to 2 Jones on Mortgages, sec. 1625, p. 551; *Life Ins. Co.* v. *Boughrum,* 24 N. J. Eq. 44; *Pancost* v. *Duval,* 26 id. 445; *Briscoe* v. *Power,* 47 Ill. 447; *Halsey* v. *Reed,* 9 Paige, 445.

This case is similar to the one at bar. *Warren* v. *Boynton,* 2 Barb. 13; *Tony* v. *Bank of Orleans,* 9 Paige, 649; *Zabriskie* v. *Salter,* 80 N. Y. 555; *Mickle* v. *Maxfield,* 42 Mich. 304; *Niles* v. *Harmon,* 80 Ill. 396.

Upon the construction of deeds, see *Cooper* v. *Cooper,* 76 Ill. 57; *Finley* v. *Steele,* 23 id. 56; *Louk* v. *Woods,* 15 id. 258; *Voris* v. *Renshaw,* 49 id. 425; *City of Alton* v. *Transportation Co.* 12 id. 38; *Hawk* v. *McCullough,* 21 id. 220; *Manufacturing Co.* v. *Wagon Co.* 91 id. 230; *Sharp* v. *Thompson,* 100 id. 447; *Maynard* v. *Maynard,* 4 Edw. 711; *Bradstreet* v. *Clark,* 12 Wend. 602; *Covenhoven* v. *Shuler,* 2 Paige, 122; *Brownfield* v. *Wilson,* 78 Ill. 467; *Gallaher* v. *Herbert,* 117 id. 160; *Lehndorf* v. *Cope,* 122 id. 317; *Park* v. *Park,* 9 Paige, 107; *Morfitt* v. *Jessop,* 94 id. 158; *Rountree* v. *Talbott,* 89 id. 246; *Blake* v. *Hawkins,* 8 Otto, 337; *Smith* v. *Stevens,* 10 Wall. 226; *Wilson* v. *Eden,* 11 Beav. 289.

Hutchin shows, by his acceptance of the deed with this clause inserted, that he meant and intended to let the rule be changed, and took the land subject to the trust deed. The intent of the parties to the deed is what this court desires to learn, and then carry it out. Chitty on Contracts, pp. 74-76, and cases cited in note 2, on page 74; *Bolman* v. *Lohman,* 79 Ala. 63; *Topliff* v. *Topliff,* 122 U. S. 121, and cases cited; *Field* v. *Leiter,* 118 Ill. 17; *Kuecken* v. *Voltz,* 110 id. 269; *Insurance Co.* v. *Whitehill,* 25 id. 466; *Coey* v. *Lehman,* 79 id. 173; *Kimball* v. *Custer,* 73 id. 389; *Harpstrite* v. *Vasel,* 3 Bradw. 121; *Benjamin* v. *McConnell,* 4 Gilm. 536; *Walker* v. *Tucker,* 70 Ill. 527.

Messrs. GRAHAM & MONSON, for the appellee Vogel:

Aliened mortgaged premises must be sold in the inverse order of alienation, to satisfy the mortgage indebtedness. 2 Jones on Mortgages, secs. 1621, 1091.

The same rule applies where the mortgagor has conveyed the mortgaged premises in different parcels, and the grantees

of these parcels again convey them in parcels. 2 Jones on Mortgages, sec. 1621; *Vogel* v. *Brown*, 120 Ill. 338; *Iglehart* v. *Crane*, 42 id. 261.

Subsequent purchasers of portions of the mortgaged premises are bound by the constructive notice furnished by the registry of prior conveyances of any portion of the mortgaged premises. *Iglehart* v. *Crane*, 42 Ill. 261.

Mr. R. A. LEMON, for the appellees Vogel and Frank Adkisson.

Mr. JUSTICE WILKIN delivered the opinion of the Court :*

Thomas B. Adkisson, being the owner of certain real estate in DeWitt county, known as lots 4 and 5, the former subject to the homestead and dower rights of his mother, and both encumbered by a trust deed to the amount of $458.27, (as found by the court below,) sold and conveyed the same in the following order, viz.: January 6, 1876, to Andrew Hutchin, lot 5; February 10, 1876, to appellant, Clifton H. Moore, lot 4. Hutchin reconveyed lot 5 in subdivisions, as follows: February 26, 1876, to Sylvanus Shurtleff, the north part; same date, to P. H. Mills, the south part; and March 6, 1876, to Jacob Vogel, the middle part. Afterward, January 20, 1882, the part so conveyed to appellee Sylvanus Shurtleff, was sold, to satisfy a balance then due on the before mentioned trust deed, for $685.66, and afterward redeemed or repurchased by the said Shurtleff. On the 13th of the following June he filed this bill for contribution. On a hearing in the circuit court of said DeWitt county he obtained a decree for the sum of $685.66, with six per cent interest from the date of said sale to the rendering of the decree, amounting at that time to $916.54. One-half of this amount was charged to and made a lien on that part of lot 5 conveyed by Hutchin to Jacob Vogel, and

---

*For a detailed statement of the facts in this case, other than as given in the opinion, see *Vogel* v. *Brown et al.* 120 Ill. 338.

lot 4 conveyed by Adkisson to appellant, Moore, the former with $191.14, and the latter with $267.14, the former also being charged with two-tenths of all the costs of that proceeding, and the latter with three-tenths thereof. This decree being affirmed by the Appellate Court, appellant brings the record here on a certificate of importance made by that court. Jacob Vogel and Frank Adkisson, appellees, assign cross-errors.

No question is raised as to the right of appellee Shurtleff to have contribution, nor is it contended that the amount found by the court below as chargeable against Thomas B. Adkisson is incorrect; neither is it denied that that amount is properly chargeable against the said lots 4 and 5; but the question is, in what order shall they be charged. There seems to be, and, in fact, there is, no room for controversy as to the general rule of law in this State applicable to such cases. If the conveyance of lot 5 to Hutchin had been without conditions, lot 4, subsequently conveyed to appellant, Moore, would have been first chargeable with the whole amount due from Thomas B. Adkisson on the trust deed, and after it had been exhausted, the subdivisions of lot 5 would have become liable in the inverse order in which they were conveyed by Hutchin. 2 Jones on Mortgages, (2d ed.) secs. 1620, 1621; *Iglehart et al.* v. *Crane & Wesson,* 42 Ill. 261.

Ignoring all conditions or stipulations in the Hutchin deed, and relying on this general rule, appellee Vogel insists that the court below erred in charging lot 5 with any portion of said sum of $458.27, except upon condition that lot 4 should prove insufficient in value to satisfy the same.

The Hutchin deed contains the following agreement: "Said land being sold, and this deed made and accepted, subject to a certain trust deed or mortgage made by Thomas B. Adkisson, and Elizabeth A., his wife, Corrilla Adkisson and Horace Adkisson, to Charles F. Emery, dated June 1, 1874, recorded June 13, 1874, in book No. 12 of mortgages, of records of DeWitt county, Illinois, at page 292, to secure the payment

of $2000, to pay which said trust deed or mortgage, by the terms of a decree of the circuit court of DeWitt county, Illinois, rendered at the December term, 1875, of said court, the following described tract of land is set apart to be sold, and the proceeds applied to the payment of said trust deed or mortgage. * * * After which said ten acres is so sold and the proceeds so applied, then the said T. B. Adkisson shall be bound to further protect said Hutchin to the amount of $200 against said trust deed, and no more, said Hutchin to pay any excess due thereon over the proceeds of said ten acres, and said sum of $200. And in case said ten acres shall produce more than sufficient to pay said trust deed, then such excess shall be paid to said T. B. Adkisson. And the said Hutchin hereby agrees to save and forever keep the said grantor harmless from the payment of any sum by reason of said trust deed, other than herein provided; that after the master in chancery of said county shall, under said decree, sell said ten acres, and have paid off and discharged said trust deed or mortgage to said Emery, he shall surrender the same, and the notes and bonds therein described, to the grantors therein, and pay to the parties to said decree, and not to said Andrew Hutchin, the excess arising from such sale, the said Hutchin not to be held responsible for the performance of the duty of said master in chancery, it being distinctly understood that said Hutchin is only bound to protect said T. B. Adkisson against the payment of money by reason of said trust deed, but that he is not required to protect Corrilla Adkisson or Horace Adkisson. As to said Corrilla and Horace Adkisson, the said Hutchin is hereby substituted in place of T. B. Adkisson."

The general rule of inverse order above stated is never applied where the parties, by an agreement in their deed, have charged a mortgage upon land in a different manner, "as, where by the terms of sale of a part of the premises the mortgage is made a common charge, or that part conveyed is subjected to a proportionate part of the incumbrance. In such

cases, if there be no specific agreement as to the proportion which each part is to bear, contribution must be made according to the relative value of each part." (2 Jones on Mortgages, sec. 1625; *Briscoe et al.* v. *Power*, 47 Ill. 447.) It is clear, therefore, that notwithstanding lot 5 was conveyed before lot 4, under the agreement between the parties, it was not relieved from the lien of said trust deed, but remained primarily liable, so far as made so by the terms of said agreement. The position of appellee Vogel can not be maintained.

Appellant contends that by a fair construction of said stipulation, Hutchin became liable for the whole amount of said incumbrance, and that therefore lot 4, subsequently conveyed to him, could only be held secondarily liable. In support of this position, it is insisted that by the latter clause, "it being distinctly understood that said Hutchin is only bound to protect said T. B. Adkisson against the payment of money by reason of said trust deed, but that he is not required to protect Corrilla and Horace Adkisson," etc., Hutchin abandoned his claim for the $200, and agreed to become liable for the whole of the debt, after the proceeds of the ten acres should be applied. This position is clearly untenable. The whole agreement must be construed together. This clause is for the protection of Hutchin, not to increase his liability. By its terms he is to protect Adkisson only, and not others. How protect him? Clearly, according to the terms of the agreement previously stated.

It is again insisted, that by the clause, "T. B. Adkisson shall be bound to further protect said Hutchin to the amount of $200 against said trust deed, and no more, said Hutchin to pay any excess due thereon over the proceeds of said ten acres, and said sum of $200," Hutchin assumed the mortgage debt over and above the proceeds of the ten acres, and the promise of payment of $200 by Adkisson was but a personal liability. The Appellate Court held against this view, and, we think, correctly. When the whole agreement is considered, the inten-

tion of the parties is shown to be, that instead of lot 5 being held *pro rata*, as it would have been under the first clause, it should be liable to the extent, but no farther, than the debt should exceed the proceeds of the ten acres, and $200. It is, in effect, but an agreement between the parties that Hutchin should pay all of the mortgage debt remaining after the proceeds of the ten acres should be applied thereon, except *the sum of $200*. We think the circuit court decided correctly in holding that both lots were liable to contribute to the payment of said sum of $458.27, and that it was properly apportioned under the agreement in Hutchin's deed.

It follows, from what has already been said, that so much of that amount as is chargeable against lot 5 was properly decreed against the part conveyed to appellee Vogel, he being the last purchaser from Hutchin. His claim, therefore, that the other subdivisions of said lot should be charged *pro rata*, can not be maintained. It is true that the rule of inverse order, both as to first and subsequent grantees of incumbered property, will not always be enforced, and never when it would work great injustice, or when, upon examination of the various deeds, the court can see that it was the intent of the parties to change the rule. But we find nothing in this record tending to show that its application would work injustice, or that the parties intended to change it, except in the Hutchin deed, as before stated.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*